May it please the Court, my name is April Mudley, Counsel for Appellant Callum Livingston. I am also here with my co-counsel Nathan Archibald. We will be splitting today's argument and we wish to reserve three minutes for rebuttal. The District Court erred in its determination that the removal of the children was not wrongful under the Hague Convention. To determine whether a removal is wrongful, courts apply a three-prong test, which in analysis of, one, whether the children were habitually resident in Australia at the time of removal, two, whether the mother's removal of the children to the United States was in breach of father's custody rights under Australian law, and three, whether the father was actually exercising those rights at the time of removal. Here, the first prong is undisputed, the children's habitual residence was Australia. However, the District Court erred as to the second and third prongs. I'll be arguing as to the second prong, the breach of father's custody rights, and my co-counsel will be arguing as to the third prong, father's actual exercise of those rights. As to the second prong, the District Court's conclusion that father's custody rights were not breached by the removal was in error for at least the following two reasons. First, the District Court erred by relying exclusively on language in a protection order that was entered more than two months after removal to conclude that father had no custody rights at the time of removal. Counsel, right there, it's important to me, did the client have the opportunity to appear and did he know of the hearing that was going to take place? Because we're talking about the appeal, the permanent order, right? With respect to the permanent order that was entered more than two months after the children were moved to the United States? It doesn't matter. My question is, did the client know that there was a hearing and had the opportunity to appear and did not? The client knew that there was a hearing and he did appear. He did appear. Yes. Okay, thank you. Did he appear at the first hearing? Your Honor, I believe he appeared at the first hearing. Okay. For the temporary protective order. What happened, who was present at the first hearing where the temporary order was issued? So, the temporary order was issued, the parties had a dispute, the mother went to the police, the police officer then applied for a protective order. That protective order then was decided about a week later at a hearing and the father was at that hearing. Was anybody else at that hearing? I do not believe the mother was at the hearing. Was any evidence taken? No, I don't believe so, Your Honor. What was the basis for the issuance of the order? My understanding is that the issuance of the order was based on the allegations of abuse. And those are in an affidavit? Say, I'm sorry? Those are in an affidavit? I'm not sure that the record has that cleared out. At no time has there been any objection there was an insufficient basis to issue that temporary order. Your Honor, I'm not sure whether there was an objection, but here I don't think it's necessary for the purpose of determination here. Because those orders are not custody orders, which brings me to the second point. And the fact that they... I understand, but they affect custody. They affect the ability of the father to contact the mother. And you're deferring on that issue to your co-counsel as to whether he exercised? No, I'm deferring to exercise to my co-counsel, but in terms of whether custody rights existed at the time of removal and whether they were breached by the removal, the temporary protective order is what the district court relied on in order to say there were no custody rights. And to determine that, we have to look at Australian law, correct? That's correct, Your Honor. What do I have in this record that tells me what is the effect in Australian law on custody rights of a temporary protective order? Your Honor, I would first direct us to look at the Hague Convention, which defines custody rights. Well, but the Hague Convention, ultimately we have to go to Australian law. The Hague Convention says the law of the country in which the child was taken applies. Right. Okay, so let's talk about Australia. Okay, so let's look to Australian law. By default, these parties had not had... There was no divorce proceeding, there was no separation order. And so by default, as parents, under Australian law, each parent has joint parental responsibility for the child, which is rights of custody for purpose of the convention, unless the child is taken away by an order of a court, which typically means a parental or custody order. Here... Wait a minute, you're getting ahead of me on that one. Where in the record does that say that that does not include an order such as the temporary protective order we have here? There's no place in the record or in Australian law that says it does not include. Well, then that sounds to me like it does apply. It's an order of a court, and it affects custody rights, what you can do. You can't even approach your own children. Yes, Your Honor, I think that's right. The order is something that we should look at. But what is important here to determine whether custody rights existed is looking at what custody rights might have been impacted by this protective order. And here, this order, parental responsibility under Australian law is defined broadly as all the duties, powers, responsibilities, and authority which, by law, parents have in relation to children. And this is not limited to mere physical custody of a child, but includes things like the right to make decisions about the child. All right. How can you make decisions about a child if you can't speak to them, you can't get close to them, you can't do anything like that? Your Honor, both honors... Let me finish. If you look at... Under the temporary protective order. If you look at the protective order, it lays out ways in order for there to be contact, right? And so you can use, you can go to your lawyer, your lawyer can make contact, and it makes a roadmap for how you would be able to get a custody order in place. Was that done in this case before May 7th, the date of departure? There was no custody order in place before May 7th. I understand. You don't want to call this a custody order, and I'll agree, it's not a custody order. It's an order that affects custody from a court, that you tell me even under... It affects custody. I mean, I don't understand how this is not a court order. I don't disagree with you. It is a court order, but it doesn't affect the type of custody that's relevant here. Did you put on an expert to help the district judge sort through this as to what exactly is Australian law in this regard? We did not put on an expert. That's not an unusual thing to do in these hate convention cases, is it? It is not unusual, Your Honor, but there is a section... Let me tell you, what I'm concerned about is you're representing the petitioner, and you're trying to take this matter forward, and it would seem to me, just glancing at some of the law, is that there should have been an expert on Australian law in light of this temporary protective order. Your Honor, our position was that on its face, the protection order was clear, that it did not affect the right of the father to make decisions about the children moving forward. The decisions on medical care, the decision of place of residence, those broad rights and duties that a father has by way of having joint custody under Australian law, and without impacting those abilities, the authoritative decision-making rights, all it said was you can't have contact, and then it laid out ways for you to be able to have contact and to put an order in place that deals with actual physical custody, which is what that order, to the extent it impacts custody, it's about physical contact. It's not about the rights of a father. I've taken up a lot of your time, and I'm sorry. I was just going to say that. Do the best you can. I'm sorry? Do the best you can. Well, I should probably turn it, unless Your Honors have more questions on the actual custody rights, I should turn my time over. Thank you. Thank you. Just the last point. Well, let me start out with a question. If it didn't affect, if you say the temporary protective order is irrelevant, basically, because it's not a custody order, it is an order of a court, and it prevented the petitioner from doing certain things. Didn't it prevent him from exercising his custody rights? That's a similar question that the district court asked. And if I may, before I get to that point, the temporary protective order was... Could you speak up a little bit? The temporary protective order was issued by a state, local magistrate, not a... background in Australia. Are you saying it doesn't qualify as a court order? It's a court order, but it's not a court order about custody. It's simply... We got that. Now we're talking about exercise of custody. Okay. Could you repeat the question, Brian? Doesn't the temporary protective order from a court, under Australian law, affect and prohibit his exercise of some of his custody rights? If you look at custody as a bundle of rights, yes, contact is one of those rights. It affected that one right of contact. But that doesn't extinguish all of his custody rights. But is that necessary? Do you have to show that if he did not exercise those limited rights affected, he didn't exercise his custody rights, right? Those are not exactly the same things. Contact is certainly one indicia of exercise of custody rights. But the temporary protection order, I guess there's two answers to that. Obviously, it did affect his rights of contact temporarily. But in the same vein, it carved out for a petitioner the ways that he could maintain contact. So it didn't extinguish contact altogether. It set out a procedure. In the seven days between the date of the temporary protective order and the date she exited Australia, did he engage a lawyer to try to be able to approach his children? Is there anything in the record? There is nothing in the record to that effect. So he failed to exercise his rights, even as limited by the temporary protective order. Well, Your Honor, then that goes to the question, is one way of non-contact? I'd like for you to answer that question that Judge Murphy just posed to you before you. I apologize, Your Honor. Can you repeat the question? Is there anything in the record that indicates that he, well, you said he did not engage a lawyer? Yes, I think I answered that question, yes. So, doesn't that verify that he failed to exercise those types of custody rights that was permitted him under the temporary protective order? During that one-week period? Yes, Your Honor. Well, that's a critical week. There's only two weeks that are critical here, and that is from the time she left the household to the time she left the country. And this is one of those two weeks. Correct, Your Honor. And that's assuming that courts consider such small amounts of time as determinative in terms of the Hague Convention. Well, first of all, he was on notice for a week before that, that she was gone. Now, I understand during that week, the record indicates that he did try to find her. Yes. Okay. So, he had that week before, then he gets this order, and it says you can make contact with the children if you do it through a lawyer. Yes. But he didn't do that. And no, he did not. And that assumes, Your Honor, that he should be faulted for not immediately engaging an attorney, particularly when he had no idea. Well, that's the issue we're talking about, exercise of the rights he had. And again, on that point, I'm perhaps repeating myself here, but courts do not find that a mere week of non-contact or any other indicia of exercising custody is determinative as to his custody rights of being abandoned. Are you citing an Australian court? No, it's in the outbreak, Your Honor. We have a section on it. Well, they're U.S. domestic courts, correct? Yes. And in those cases, I looked at those cases, and you're talking about DeBacci, Vittori, Roe, those cases? Yes. Okay. In those cases, they're talking about permanent custody. They're not talking about temporary custody. And doesn't that make a big difference? Well, the temporary custody is not what we're dealing with under the Hague Convention. Well, that's what you have to show, that she interfered with his existing custody rights. Yes. And you have to show that he tried to exercise those rights. That's right, Your Honor. But again, a petitioner can't be faulted for not immediately getting a lawyer the day after the protection order was entered. How about three days after? Well, particularly where he didn't know that she was going to leave the country. So what was he to do? He didn't know where she was. Correct. He didn't know that for a week before the hearing. And then for another week, he still doesn't know. Correct. And again, at this time, the country was locked down under COVID. There was, without special permission from the government, there wasn't the ability to leave. The idea that he was sitting there thinking, well, what do I need to do to preserve my Hague Convention case, I don't think is realistic, Your Honor. And again, I'll just go back to the test. I see that I'm out of time. But the test is, presumably, a parent with custodial rights is exercising custody. That's the presumption. If, and only if, Mr Livingston's acts constitute a clear and unequivocal abandonment of the child, should that presumption be ignored. So if we're, I don't think, and again, the district court didn't dispute this. The district court recognised that there was no clear and unequivocal abandonment here. That's the test. Not was, should he have, on day three, retained a lawyer to protect unknown Hague Convention rights. We've got to look to see, in terms of exercise of custody, was there clear and unequivocal abandonment? And there is no evidence of that. Does the record indicate whether he had a lawyer at the hearing on the temporary protective order? It doesn't indicate that, no, Your Honor. And I'm doubtful that there was. Don't you have an opportunity to present that record? We've presented the record from the temporary protection, of the temporary protection order, which indicates that Petitioner was present in court. And that's it? Yes. Just the order? That's all we have is the order. Just the order, yes. And some supplemental papers pursuant to the order. Again, I just focus on the test. We can hypothesize regarding some of these issues, but we've got to look for clear and unequivocal abandonment. That's simply not present here. He had custody because the temporary protection order says nothing about custody. It goes to contact, which is only one of the bundle of rights. As to exercise of those custodial rights, there's a presumption that he was exercising them. There's nothing in the record to indicate that he abandoned those rights. With no further questions. I do have a question, because you're out of time. Nobody's addressed mootness. And you have made an argument, and I think a salient argument,  and so we should disregard what Judge Moore did by relying on the permanent protective order. But doesn't, or does, the permanent protective order implicate mootness, either constitutionally or prudentially? Your co-counsel and you rely in your briefing on section 111 of the Family Law Act in Australia that indicates, I think,  that both parents are presumptively have custodial rights unless there is an order that essentially vitiates all legal responsibility of one of the parents. Now, as my colleagues have questioned, you and your co-counsel, now the father, Callum, could not see the children. And then once the permanent protective order becomes in place, he can't even try to find out where his wife is. And so I was imagining, well, what parental responsibilities could one have as a parent? Well, you can certainly have a monetary responsibility for the upkeep, the care of the children. But if he doesn't even, if he is legally prohibited from finding out where to send the check to his wife, I'm not sure that there's not a cogent argument to be made that he, in effect, through that permanent protective order, had been prevented or relieved, in effect, of any legal responsibility or any opportunity to exercise his legal responsibilities. Should we be worried about constitutional or prudential weakness? Well, there's a fair amount of assumptions in there of things that he cannot do under Australian law once she returns. Well, I'm just quoting what I think the permanent, what everybody has agreed that the permanent protective order says. And I understand that, Your Honour. I guess my point is that there's an assumption there that he could not serve her with process. He was prohibited from trying to, am I right, that the permanent protective order prohibited him from even trying to figure out where his wife is? To the extent we've, you know, analogized to... Am I wrong about that? Well, by analogy to US law, there are many ways that someone can be served with process in order to initiate proceedings. There's any number of ways that the matter could move forward without him turning up at her door in order to process himself. So there's some assumptions built in there that there's... So what could he have done? I mean, what parental responsibility, once the permanent protective order is in place, what parental responsibilities could he have exercised or have been contemplated once the protective order had become permanent? Well, again, contact. There's still a provision in the permanent protection order that allows him to have contact if under a order under the Family Law Act. But you said that in your briefing, I think, very effectively. But the question that I have is, you know, I'm not from Australia, and I'm not an Australian law expert, and I don't have any briefing on the content of Australian law on when there's not even a divorce petition, if Australian law contemplates that the court could, the Australian court, order, you know, could make an order. I mean, what jurisdiction would the court have? I mean, there's not even a divorce petition. So you'd have to marry people. So you'd start with the divorce proceedings in the Australian Family Law Court. Or you could just do any of the carve-outs that are in the permanent protection order, which allows a petitioner to maintain contact with the children. Those still exist. And I guess our point is you can't read those out by focusing on this locate, attempt to locate language, and then assume from that language that this protection order does two things. Essentially takes away custody and takes away his right to seek custody in an Australian Family Law Court. It simply can't be read in that matter. That's far too broad. And essentially it reads, uses one provision to completely read out all the others. Even under the permanent protection order, he still had rights. The permanent protection order only goes to protecting the aggrieved from domestic violence, not anything else. Do we know under Australian law  in Cairns, Queensland, would be the forum for a custody filing? This isn't in the record, but I'll just answer it based on my experience in Australia. Family law is a federal matter. So the family law courts, similar to the United States, they're essentially like bankruptcy courts. They're federal. Are the magistrate courts part of that? No, the magistrate court is a dual-conceded. What do we have in the record that indicates that? We don't, Your Honor, based on our argument, these protection orders, I don't think we've made this point, but it's in our briefing, as every court that has looked at protection orders and custody have determined they are completely different things. Protection orders do not eviscerate custody. Okay, but those cases are cases that talk about abandonment and they deal with a final permanent custody order. They do not deal with temporary custody. So at least one of the courts, and I don't have this to hand, dealt with temporary custody. I think this is the Nicholson case. Well, I looked at DeBacci, I think it's Nicholson, Vittori, Rowe, Illinois, First Circuit, Southern District, New York, District of Minnesota, and I think they're all permanent. And again, I'm probably misunderstanding the distinction because we're just dealing with custody, we're not dealing with temporary or permanent custody, especially because even if there's a temporary protection order, it doesn't go to custody. If you're looking for, in Australia, a temporary custody order, that wouldn't come under the Queensland Domestic and Family Violence Protection Act in a magistrate's court, which is essentially a local court in Cairns, which is a remote holiday destination. It'd come from a family court, which is a federal, part of the federal court jurisdiction in Australia. Thank you. Is it possible to reserve a minute for rebuttal? I'll give you a minute. Okay, thank you. Cheers. So we'll hear from the appellate. Good morning, Your Honours. Russell Murray, appearing on behalf of the Respondent Appellee Cross Appellant, who is designated in the record as Emerald Livingston. Her name, as we noted at the trial court, and I believe in documents filed with Your Honours, is Emerald Simmons. But that's a finer point, I guess, at this stage. Ms. Simmons and I ask Your Honours to affirm the district court order. There is little question that essentially everything that the appellant is attempting to argue today is what they failed to present at the trial court. They never addressed Australian law. Did they argue in district court that we look at the three-prong test at the time of removal? I don't recall if they argued that, but the court certainly did that. Is that the correct test? That we look at the time of removal, April... May 7th, sorry. Early May 2020. Is that the critical time period in which we apply that test? Well, that seems to fluctuate from case to case on Hague Convention appellate cases, but I think it is fair to say that is it. I would acknowledge that is it. And the permanent protective order was two months after that, correct? The permanent protective order was. And Judge Moore relied on the permanent protective order. I believe Judge Moore relied on both. Both were presented. To the extent that he relied on the permanent protective order, do you concede that he was wrong? And if not, why in the world not? There's a preceding order. April 29th order. My question was, to the extent that Judge Moore relied on a post-May 7th order, the permanent protective order, to the extent that he relied on that order, he clearly should not have, correct? I don't agree with that. So you can look at the rights of custody once someone has violated the Hague Convention, removed the children from their country of habitual residence, and then later look at, well, what has a court done in terms of custody? How do you do that? Do you have any authority for that? Do you retroactively say, well, because two and a half months after Emerald had brought the children to the United States, Callum doesn't have custody now, so he must not have had custody two months before the permanent protective order. I don't even understand how you can make that work. And your honor, if I may, as one who does a fair amount of Hague Convention, of 1988 convention work, I think these are questions that lie in essentially every case. And I believe I could rely in response to your question even on the determinations by the U.S. Supreme Court in the case of Golan v. Sada. That's a 2022 case. It involved Italy. Different facts, but the issue of custody is not necessarily the thrust upon which a case is decided. The Hague Convention itself refers to habitual residence. So, as was noted, the court found, and I think we'd be hard-pressed to argue at this stage, that habitual residence was not in Australia. However, parts two and three of that, meaning, did he have rights, point two, and point three, was he exercising those? Yeah, I'm not asking about any of that. Maybe I didn't ask it very well. I'm just asking about that May 7th date. As you're saying, you can look at orders that are post-May 7th, and I'll just ask you, how? Why? Do you have any authority for that? It's a very narrow question. It is, and I have no authority for it. As I stand here today, I have no authority for it. And it's inconsistent with the proposition that we're talking about rights of custody as of May 7th. Would you acknowledge this is the right way to do it? Your Honor, I think in order to acknowledge it in the manner as I am receiving it from your honors, we'd have to say that the May 7th order then somehow modified, overturned, or amended the earlier temporary order. What May 7th order? There was no May 7th order. There was no order on May 7th. That's when she left. I'm sorry. And I don't recall the permanent order. Yes. If we are, in fact, relying upon the permanent order, as you're suggesting to me, I don't think that it makes a difference because the second order, the permanent order... But Judge Bacarek's question is not that. My understanding of the question is, what authority do you have that we can rely upon the second order? That's the question. What authority? I mean, you know, you can give me Australian authority, you can give me New Zealand authority, you can give me U.S. authority. What authority is there for that? As you are asking it, I cannot cite authority to that. But that order reiterates and essentially encompasses the prior order, which was the temporary order. That's very common, whether we're in the United States or whether we're in Australia. So the protections that were afforded, the individuals, and I emphasize that there are more than one protected parties here, Ms. Simmons, Ms. Livingston is a protected party as the movement. The children are protected as well. If, in fact, I was going to try to, as I hear you, if I were going to take the position that the second order is meaningless, if you will, in terms of a Hague Convention analysis, then I believe what we would find is we would find that Ms. Livingston and the children really had no protections whatsoever unless they were, I think as a petitioner stated it, unless they were in Cairns, Queensland. That stating somehow that's not good law elsewhere, that's not the case as we understand it. But one of the difficulties that we all seem to be having in addressing these things is the petitioner at trial, the appellant here, never states what Australian law is. They simply try to say that Australian law gives him rights to the children. Well, what they do say is they quote section 111b4a of the Family Law Act in Australia that says, both parents of a child should be regarded as having rights of custody in respect of the child unless the parent has no parental responsibility for the child because of any order of accord for the time being in force, end quote. So what they're arguing is that on May the 7th, the only order in place was a temporary order that said nothing about his responsibilities as the dad to support his two kids. And it's not only did the April 29th temporary order not say anything about anything other than, you know, access to the child with these caveats like he said, except through written agreement, et cetera, in order of the court. But how can we say that the April 29th order expressly relieved him of any parental responsibility for the child? It restricted him from contact with both the respondent, I'm sorry, the petitioner. In that instance, she was the petitioner. Did he have to give her money as the dad? There was no monetary order to date. No, yeah, exactly. So what you're saying is he couldn't see the kids, but if she said, look, you're the dad, I mean, under Australian law, wasn't parental custody presumptively for both parents? There was not even a separation application. I'm certainly not going to try and argue with what you've just read as article, I believe it was 111, I'm sorry. And I apologize for my voice. I've been very sick and taking medication for a long time. Well, anyway, counsel, let me, I don't know that I can ask the question any better than what's been asked of you. But in order to separate it out, I called it the T.O., the temporary order, and the P.O., the permanent order. Opposing counsel is arguing that the temporary order does not go in any way, shape, fashion, or form to what constitutes custody of the children. All it does is say, you can't see them, don't get around them or anything. That's the temporary order. Now, a few days later, and I assume that he was there, he didn't object, the trial court comes out, or whatever court it is, with a permanent order that really appears to just strike him from any contact at all, as I read it. But the question is, can our court, without any more authority than what we've got, rely on that permanent order? Because, and the only argument that I see is that they say, yeah, he was there and he appeared, but he didn't object to the severity of that permanent order. But that still doesn't give me any law that said our trial court could rely on the P.O. Does that make any sense? I've just read it. I think you've described it, as have each of the other judges, in such a way that it is a question, certainly. But for us to be attempting to answer the question for an Australian court, I think is wrong. Under the Hague Convention, the first order restricts him. There is no question of that. Well, if that's true, it would have helped me, certainly, to have seen that. And I'm wondering if additional briefing would be helpful. We're talking about mootness. I just don't have a whole lot of help in this case, let's put it that way. Well, and Your Honor, we would submit that that is the fault of the petitioner. If we are saying it in terms of fault, the case has been filed for 20 months, 18 to 20 months, I believe. But what you described to me, you said that's the fault of the petitioner. OK, describe to me, so I can understand, what is their fault? If their argument is that somehow this court must defer to an interpretation of Australian law, that it really was never given, other than a page out of a statute, I'd say that that warranted, as was earlier addressed by you in questioning with petitioner, I'm sorry, appellant, that why wasn't there an expert? Why wasn't there someone? Everyone relied upon that order. Mr. Livingston was present for the issuance of the temporary order that restricted him. He was aware at that time of the subsequent order. He appeared for the subsequent order. At no time did he ever seek to challenge what either of those said. And I don't know that the term custody is the sole term on which we need to rely here. The court ordered possession of the children exclusively to Ms. Livingston Simmons. And in doing so, it gave Mr. Livingston opportunities to attempt to exercise what are being claimed as parental rights. And if one were to take a literal reading of that section of the statute, they still are arguing against what this court found, Judge Moore found, he never exercised them. Once that first order entered, he never exercised any rights with his children, not communication, not attempts at physical contact, not payment as one might expect a parent might do for children, appreciating that oftentimes people need a court order to sort of kick them in the behind to do that. But nothing was done by him. He did have a right before the July 2nd order to seek out his wife. I mean, he couldn't contact her, he couldn't contact the children, couldn't come within 10 feet, whatever it was, but he could seek them out. And it's only in that second order that says he is prevented from trying to locate them. And under the circumstances, that's a pretty big deal, isn't it? Your Honor, under either order, he had the right. And in fact, one could almost say he had the onus placed upon him to reach out to law enforcement or come back to court and ask for further orders, somehow allowing him to do that. He has never done that. He has a short period of time that in the first week after she exits the household, he's looking for her. I mean, I think the record is pretty clear that. I don't know if it distinguishes between what he did in the second week after the order, whether he continued to look for her, but he could have, right? Well, I think at any point he could have. Well, wait a minute. After the July order, wasn't he prevented completely from trying to locate her? Personally, and if we apply a US or a Colorado interpretation to that protective order, an individual may not do through a third person that which they are precluded from doing themselves by way of the existence of the court order. I don't believe I've ever seen that applied to someone reaching out to the police, for example, on a welfare check. He didn't do that. At any point during any of these orders, he took no steps in efforts to try to communicate. Well, you know, it says the respondent, Mr. Livingstone, must not arrange for someone else to locate the agreed. Now, if he complains to the police, it's violating that order, I think. By my view, albeit not the view of an Australian judge. Is that correct? The police actually filed for the order. The what? The police filed for the order. I understand that. We're talking about post-order. You said that he could have gone to the police to try to locate her. I believe he could have. Okay. How could he do that without violating paragraph four of the permanent order? Well, I don't believe that's my place to interpret, but in response to your question, I would say, again, and it is noted in the record, by the way, Ms. Livingstone spoke first with the Australian authorities before leaving. She then, having gotten grace from them to leave, she spoke with the United States authorities at the embassy and received authority from them to do the same. Mr. ... I mean, she left a trail that if we're saying he couldn't contact her and yet we're saying, and the appellant is saying he tried to, well, what did he try to do? That's never made clear. He didn't take any steps, and therefore ... Let me ask this. Is that stuff you were talking about where she contacts embassies, is that all in the record? It is in the testimony, yes. In your testimony in front of Judge Moore? Yes. I would note also that the permanent order is in place until July 15th of 2025, so if I may, and I appreciate I'm over time, but if I may, if we- As the appellant. Thank you. Go ahead. Alternatively, let's say she is ordered to return. As a non-citizen, and I believe this is also in the record, the testimony, as a non-citizen, she can't gain employment. She has no ability to obtain a governmental assistance for the children, so she would be left where she ordered to return, where the children ordered returned, and we presume, of course, she would go with them. There would be no one other than the petitioner to whom she could turn for support, and that's restricted. These rights that she would not have should she return, is the source of that her own testimony about her legal rights? It's her own testimony bolstered by what she provided, and I believe she testified as to how she came to know that, but I can't say that definitively. Was there objections to that? I don't believe there were. All right. Thank you, counsel. Thank you, your honors. We greatly appreciate your time and patience and attention. All right. Thank you, and I have given the petitioner one additional minute for rebuttal. As the clock indicates, I'll be very quick. Just a bit of housekeeping. There's a cross-appeal here. It wasn't argued in the briefing. It wasn't argued here. I'd just assert that that should be, the district court should be affirmed on that cross-appeal. In terms of expert testimony, a lot of faults has been thrown at petitioner on this point. It bears repeating a couple of things. Respondent also did raise 13B, which is a defense that there's three Bs, sorry, 3B and 13A. They're both identical, and they go to the exercise of custody. Respondent didn't bring an expert on that point either. They're mirror claims. And the last point on expert testimony, these protection orders speak for themselves. The judge is able to read them, discern them, without the benefit of Australian law because they just, again, as I said, they just speak for themselves as to what they do. And I'll end on that point, your honor. 3A, 3B, rulings of the district court should be reversed and remanded. Thank you. Okay. Thank you, counsel. Both sides, this is a matter will be submitted.